IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| C.T. and G.T., ) <br> ) <br> Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> BLUECROSS BLUESHIELD of ILLINOIS, ) <br> ) <br> Defendant. ) | Case No. 1:23−cv−06112 <br><br> Honorable Jeremy C. Daniel <br><br> REDACTED VERSION |

# DEFENDANT'S RESPONSE IN OPPOSITION TO
# PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT UNDER RULE 56

Martin J. Bishop, No. 6269425
Rebecca R. Hanson, No. 6289672
Taylor Marcusson, No. 6342379
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Tel: 312.207.1000
Fax: 312.207.6400
Email: mbishop@reedsmith.com
Email: rhanson@reedsmith.com
Email: tmarcusson@reedsmith.com

*Counsel for Blue Cross and Blue Shield of Illinois*

I.  **INTRODUCTION**

This Court should deny Plaintiffs' Motion for Summary Judgment ("Plaintiffs' Motion") and grant BCBSIL's Rule 52 Motion ("BCBSIL's Motion") for Judgment because Plaintiffs have failed to establish that G.T.'s RTC treatment at CALO was medically necessary under the terms of the Plan.[1] Plaintiffs' asserted entitlement to benefits rests almost entirely on the adequacy of BCBSIL's denial letters and BCBSIL's alleged failure to provide them with a full and fair review of the denied claims, but this inquiry is irrelevant to this Court's *de novo* review under the law of this Circuit.

Moreover, Plaintiffs point to no evidence that provides this Court with a basis to independently determine that G.T.'s symptoms required treatment at an RTC under the Milliman Care Guidelines ("MCG"). In their Proposed Findings of Fact ("PFF"), Plaintiffs cherry-pick a relatively small number of incidents that occurred over 568 days of G.T.'s stay at CALO to suggest that G.T. often lashed out violently, and "frequently abused animals," but the record does not support that characterization. Instead, the incidents Plaintiffs point to merely amount to G.T.'s use of profanity (which was not in any apparently violent way) and sparse, vague references to "aggression," none of which indicates that G.T. needed care 24-hours a day at the RTC level of care.

---

[1] As threshold matter, Plaintiffs' Motion is procedurally deficient. None of the sweeping factual allegations in their memorandum of law are supported by any citations to their proposed findings of fact as required by Local Rule 56.1(g) ("When addressing facts, the memorandum must cite directly to specific paragraphs in the LR 56.1 statements or responses."). That leaves BCBSIL and this Court is left to scour all 119 paragraphs in search of the evidence upon which they purport to rely. Plaintiffs' Motion can and should be denied on this basis alone. *See Outley v. City of Chi.*, No. 17 C 8633, 2021 U.S. Dist. LEXIS 196110, at *55 (N.D. Ill. Oct. 12, 2021) (denying motion for summary judgment where the relevant portions of the moving party's brief failed to cite Local Rule 56.1 statement.); *Palmer v. City of Markham*, No. 20-cv-2603, 2023 U.S. Dist. LEXIS 243464, at *5 (N.D. Ill. Feb. 24, 2023)(striking non-complaint memorandum of law and noting that the requirements of Local Rule 56.1(g) are mandatory).

Tellingly, after CALO discharged G.T. home in January 2022, he displayed the same behaviors at the same frequency as he had upon admission in June 2020, indicating that G.T. could have been home with his family 568 days earlier and that G.T.'s stay at CALO was not medically necessary.

Thus, viewing the record as a whole, G.T. did not exhibit symptoms severe enough to require 24-hour supervision at an RTC and, accordingly, his condition did not meet the Plan's criteria for medical necessity for RTC level of care. On this summary judgment record, Plaintiffs are not entitled to benefits under Count I of their Complaint (the only count remaining in this case) and their Motion should be denied.[2]

## II. BRIEF FACTUAL BACKGROUND.[3]

The Plan covers a continuum of mental health care that ranges from the most intensive level (inpatient hospital) to the least intensive levels of care (several levels of outpatient services), with RTC care—like the care CALO provided—falling in the middle, "intermediate" level of care. PSAF ¶ 2. Under the Plan, services must be "Medically Necessary" to warrant coverage, which means, in pertinent part, that services are "required, in the reasonable medical judgment" of BCBSIL, for the treatment of a symptom or condition, and the service or care provided "is the most efficient and economical service which can be safely provided." *Id*. ¶ 3 (applicable exclusion

---

[2] Plaintiffs have conceded that Count II of the Complaint alleging that BCBSIL violated MHPAEA was without merit based on their review of the record and BCBSIL's discovery responses and have withdrawn that claim. Plaintiffs' Motion at 2 n. 1. Thus, the only claim remaining at issue in this case is Count I for ERISA benefits.

[3] BCBSIL's Response to Plaintiffs' Proposed Findings of Fact ("BCBSIL's Resp. to Plaintiffs' PFF") and BCBSIL's Statement of Additional Material Facts ("PSAF"), filed contemporaneously herewith, are incorporated by reference herein. When BCBSIL cites to its Resp. to Plaintiffs' PFF, it is citing to the statements made in response to Plaintiffs' asserted facts in their PFF (and BCBSIL's accompanying record citations). BCBSIL's position on Plaintiffs' asserted facts are clarified in their Response.

2

for services that are not medically necessary).

On January 27, 2021, six months after G.T. was admitted to CALO, and even though the Plan required Plaintiffs to seek prior authorization for coverage of RTC care, Plaintiffs requested both retroactive authorization and preauthorization for coverage. PSAF ¶¶ 8-9, 12, 19. BCBSIL denied both requests due to lack of medical necessity. *Id.* Plaintiffs appealed the denial of retroactive authorization on February 14, 2021, and the denial of preauthorization on June 29, 2021. *Id.* ¶¶ 10, 12. On March 1, 2021 and July 19, 2021, respectively, BCBSIL upheld its denials after considering Plaintiffs' arguments. *Id.* ¶¶ 11,13. On or around November 24, 2021, Plaintiffs submitted a request for external review to the Illinois Department of Insurance ("IDOI"). *Id.* ¶ 15.

Both BCBSIL and the IDOI reviewer evaluated the medical necessity of G.T.'s request for RTC coverage using the applicable MCG. *Id.* ¶¶ 4-7. For RTC coverage, the MCG require a member's thoughts of suicide or harm are either absent or manageable at a lower level of care, and that functional impairments, medical comorbidities, adverse medication events, and substance use are absent or treatable at a lower level of care. *Id.* Both BCBSIL and IDOI denied coverage for G.T.'s stay at CALO because his treatment was not medically necessary under the MCG because the level of his symptoms did not warrant 24-hour intensive treatment at the RTC level of care. PSAF ¶¶ 8-9, 12, 20-24.

The IDOI, through an independent external reviewer working for Advanced Medical Reviewers, assess all of the documentation submitted to BCBSIL and upheld BCBSIL's denial of G.T.'s treatment. *Id.* ¶¶ 16-17. The independent reviewer specifically discredited G.T.'s parents' evidence of aggression from three months prior, noting that Trails observed his aggression had largely improved by the time of his admission to CALO. *Id.* In fact, the records from Trails show G.T. largely had no issues, and his purported difficulty with peers and tantrums amounted to one

incident where he punched a tree. *Id.* ¶ 19.

The independent reviewer also explained that while CALO would ▮▮▮▮ G.T. for ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ such as yelling, isolating, not listening, refusing to get out of bed, refusing to shower, and horseplay, these behaviors did not necessitate an RTC level of care. *Id.* In short, the independent reviewer upheld BCBSIL's medical necessity-based denial, agreeing that G.T.'s symptoms did not warrant the intensity of RTC level of care.

While G.T. had been admitted to CALO for relationships (PSAF ¶ 19) or because he struggled with ▮▮▮▮▮▮▮▮▮▮ namely, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ CALO recognized during G.T.'s stay that his symptoms were at baseline, recommending him for a Partial Hospitalization Program ("PHP") with the same severity of symptoms, and even discharging him to the outpatient level of care in January 2022, with the same severity of issues that he had had since his admission. Plaintiffs' PFF ¶ 45(a); PSAF ¶¶ 22, 23, 28, 36 (CALO claimed that G.T.'s issues with boundaries and other social skills required RTC even 2 days before discharge). Moreover, G.T.'s aggression also did not affect G.T.'s ability to participate in treatment. PSAF ¶ 25 (G.T. participated and engaged appropriately throughout his stay). G.T. mostly followed expectations without issue. *Id.* ¶ 29. G.T.'s psychiatrist reported he had a good mood for the duration of his stay. *Id.* ¶ 25. G.T. had no thoughts of harming himself or others during his 500-plus day stay. *Id.* ¶ 24. He was compliant with all medication. *Id.* ¶ 26. While at CALO, G.T. mostly completed his activities of daily living independently, was mostly in a stable, baseline mental state and actively participated in treatment. *Id.*

CALO noted that G.T. was the target of severe and relentless bullying by other patients which provoked a response from G.T. on several occasions. *See, e.g.*, PSAF ¶¶ 27-28. PSAF.

Setting the bullying aside, G.T.'s mental health symptoms did not interfere with his ability to participate successfully in trips to parks, stores, and restaurants. *Id.* ¶¶ 29, 31.

G.T.'s treatment plan contemplated daily and weekly therapy sessions that are available in outpatient care and which he could safely complete at home. *See id.* ¶ 21. G.T.'s individual therapist at CALO frequently left blank the portion of G.T.'s individual therapy notes that are used to identify symptoms or behaviors "demonstrating the continued need for [the] RTC level of care." *Id.* ¶ 23. In short, CALO's records are devoid of evidence that G.T.'s condition required RTC level of care.

### III.     ARGUMENT.

Plaintiffs' Motion should be denied in its entirely for two reasons. First, Plaintiffs' argument that they did not receive a full and fair review of their claims is irrelevant to this Court's *de novo* review. *Marantz v. Permanente Med. Grp., Inc. Long Term Disability Plan*, 687 F.3d 320, 328 (7th Cir. 2012). Second, Plaintiffs have failed to demonstrate their entitlement to benefits for G.T.'s stay at CALO by a preponderance of the evidence, and thus their claim fails as a matter of law. *Slaughter v. Hartford Life & Accident Ins. Co.*, No. 22-cv-5787, 2024 U.S. Dist. LEXIS 115908, at *18-19 (N.D. Ill. July 1, 2024).[4]

#### A.     Plaintiffs' "Full and Fair Review" Argument is Irrelevant to This Court's *De Novo* Review of the Record.

Plaintiffs' chief argument in their opposition is that they did not get a full and fair review of their claim under ERISA's meaningful dialogue standard. Plaintiffs' Motion at 3-5. Plaintiffs'

---

[4] It is unclear why Plaintiffs filed a Rule 56 Motion for Summary Judgment having agreed that "Federal Rule of Civil Procedure 52(a) is the appropriate mechanism for resolving the disputed matters in [the] case." *See* Stipulation and Agreed Order Regarding Briefing Schedule for the Parties' Dispositive Motions, Dkt. 51. Indeed, the Seventh Circuit "has suggested that Rule 52(a) is the applicable standard of review in an ERISA case where" as here "the parties have stipulated to facts that made up the administrative record." *See Slaughter*, 2024 U.S. Dist. LEXIS 115908, at *3; *Paulus v. Isola USA Corp. Ret. Plan*, 2014 U.S. Dist. LEXIS 14474, at *1-2 (W.D. Wis. Feb. 5, 2014) (quoting *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456, 461 (7th Cir. 2001)).

argument not only fails under the binding precedent of this Circuit, but also – even if meritorious (it is not) – would not result in an award of benefits in this case.

Specifically, Plaintiffs argue that under *Dominic W. v. N. Tr. Co. Emp. Welfare Benefit Plan*, 392 F. Supp. 3d 907, 916 (N.D. Ill. 2019), the Tenth Circuit's decisions in *D.K. v. United Behavioral Health*, 67 F.4th 1224, 1236 (10th Cir. 2023), and *David P. v. UnitedHealthcare Ins. Co.*, 77 F.4th 1293, 1309 (10th Cir. 2023), the Court should reverse BCBSIL's denial and award benefits on the basis that BCBSIL did not meaningfully respond to Plaintiffs' appeals. Plaintiffs' Motion at 5.

As an evidentiary matter, Plaintiffs' argument fails because BCBSIL did provide a full and fair review. Here, the record establishes that BCBSIL's medical reviewers properly cited and applied the relevant clinical criteria for RTC and properly weighed and considered all of the evidence. PSAF ¶¶ 9, 12. Although Plaintiffs contend that BCBSIL's medical reviewers ignored the "unanimous" opinions of G.T.'s treating doctors and letters supporting RTC (Plaintiffs' Motion at 5) they fail to support this conclusory assertion with any citations to the PFF. *See generally* Plaintiffs' Motion. As such, Plaintiffs' argument lacks any evidentiary support and should be rejected on that basis alone. *See Masad Food Indus. v. Int'l Golden Foods, Inc.*, No. 21-cv-06075, 2024 U.S. Dist. LEXIS 174473, at *3 (N.D. Ill. Sep. 26, 2024) (noting that a party's stated facts in its memorandum of law were not supported by the evidentiary record because, among other things, it failed to cite to its Local Rule 56.1 statement).

Next, BCBSIL's denial letters to Plaintiffs stated that BCBSIL was denying their requests for authorization because treatment was not medically necessary because G.T. did not want to harm himself or others, and could have received treatment at a lower level of care, such as partial hospitalization. PSAF ¶¶ 9, 12. BCBSIL acknowledged that G.T. had received treatment at Trails

6

immediately prior to receiving treatment at CALO. *Id.* He was able to go off-campus into the community. *Id.* BCBSIL further acknowledged that G.T. was responsive to redirection and compliant with all his medicine. *Id.* BCBSIL's communications lay out the exact reasons for denying Plaintiffs' claims and are therefore more than sufficient to constitute a meaningful dialogue under the law of this Circuit. *Donato v. Metro. Life Ins. Co.*, 19 F.3d 375, 382 (7th Cir. 1994) (full and fair review where denial reasons were not in denial letter but in separate reports plaintiff received), overruled in part on other grounds by *Diaz v. Prudential Ins. Co. of Am.*, 424 F.3d 635, 638-639 (7th Cir. 2005); *see, e.g.*, *Siebert v. Cent. States, Se. & Sw. Areas Health & Welfare Fund*, 496 F. Supp. 3d 1152, 1165 (N.D. Ill. 2020) (full and fair review where plaintiff's actions during appeal showed he "knew enough from the [denial] letter to mount a genuine (if ultimately unsuccessful) challenge"); *Jacobs v. Guardian Life Ins. Co. of Am.*, 730 F. Supp. 2d 830, 850 (N.D. Ill. 2010) (similar).

On top of lacking any evidentiary support, Plaintiffs' argument has no application here because this Court is conducting a *de novo* review of the record and *Dominic W.* and the out-of-circuit *D.K.* and *David P.* cases Plaintiffs rely on involved the abuse of discretion standard. See *Dominic W.*, 392 F. Supp. 3d at 915 (noting it was decided under the abuse of discretion standard); *D.K.*, 67 F.4th at 1229 (same); *David P.*, 77 F.4th at 1308 (same); *see* Plaintiffs' Motion at 2-5. Under binding precedent in this Circuit, Plaintiffs' full and fair review argument has no basis and Plaintiffs' cases do not apply to this Court's *de novo* review. Under *de novo* review, the Court's role is to render an independent determination on the merits of Plaintiffs' claim based on the record as a whole, without deference or a presumption of correctness to BCBSIL's original denial. Thus, "[w]hat happened before the Plan administrator or ERISA fiduciary is irrelevant." *Diaz*, 499 F.3d 640, 643 (7th Cir. 2007). In other words, "whether the plan administrator gave the employee a full

and fair hearing or undertook a selective review of the evidence is irrelevant [in a *de novo* case]." *Marantz*, 687 F.3d at 328 (stating that "[t]he district court's role was to make an independent decision about [plaintiff's] entitlement to benefits, and therefore any procedural foibles [defendant] may have made are irrelevant on appeal."); *Dorris v. Unum Life Ins. Co. of Am.*, 949 F.3d 297, 304 (7th Cir. 2020) (same).

Notably, Plaintiffs fail to address this binding case law in their brief, arguing that the Seventh Circuit has "not specifically addressed this issue" (Plaintiffs' Motion at 4), a claim that fails in light of *Diaz*, *Marantz*, and *Dorris*. Plaintiffs' failure to at least bring these adverse cases to this Court's attention underscores the fact that their full and fair review argument is devoid of any merit. *Gross v. Town of Cicero, Ill.*, 619 F.3d 697, 703 (7th Cir. 2010) ("Failing to cite adverse controlling authority makes an argument frivolous.").

Moreover, Plaintiffs' arguments do not provide a basis for recovery under Section 502(a)(1)(B) because the appropriate remedy for a procedural violation is not an award of benefits. *See Kough v. Teamsters' Local 301 Pension Plan*, 437 F. App'x 483, 488 (7th Cir. 2011) ("[T]he appropriate remedy for the Plan's procedural violation . . . is not, as the plaintiff argues, an award of benefits."). ERISA is designed only to protect "contractually defined benefits" and, as a result, Plaintiffs cannot create coverage where the Plan does not provide it. *Black & Decker Disability Plan v. Nord,* 538 U.S. 822, 830 (2003) (quoting *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113 (1989)).

> **B.    This Court Should Deny Plaintiffs' Motion and Grant BCBSIL's Motion for Judgment on Count I Because Plaintiffs Fail to Demonstrate By a Preponderance of the Evidence That They Are Entitled to Coverage**.

Plaintiffs must prove their entitlement to benefits by a preponderance of the evidence. *Slaughter*, 2024 U.S. Dist. LEXIS 115908, at *18-19 (applying *de novo* standard of review and

8

finding that plaintiff failed to meet his "burden of proving, by a preponderance of the evidence, that he continuously satisfied the Plan's requirements for payment of monthly disability benefits"). Here, Plaintiffs fail to meet this standard because they offer no evidence that G.T.'s condition met the requirements set out in the MCG for him to qualify for coverage for the round-the-clock care RTC provides, and therefore there is no evidence that G.T.'s condition met the Plan's medical necessity requirements. As a result, Plaintiffs cannot prove by a preponderance of the evidence that they are entitled to benefits.

Specifically, Plaintiffs fail to present any evidence that the severity of G.T.'s symptoms required RTC under the MCG. While CALO asserted that G.T. required continued RTC care because of poor social skills and ability to manage conflicts (*see* Plaintiffs' PFF ¶¶ 45(a)-(b), (d)-(g), (j)-(k), (m)-(n), (p)-(q), (s), (u)-(x), (aa), (cc), (ff)-(ii), (kk), (mm), (nnn)), Plaintiffs fail explain how his symptoms made him a danger to himself or others, interfered with his care, or presented such a disruption in his daily life that full time care was essential as is required under the MCG for the care to be medically necessary under the terms of the Plan. This case is like *Christina M. v. United Healthcare*, No. 1:22-cv-136, 2024 U.S. Dist. LEXIS 191203, at *22 (D. Utah Sep. 23, 2024). In *Christina M.*, the member's purported social deficits did not support RTC level of care because, while the member's "chronic mental health and behavioral issues definitely supported continued mental health treatment," the plaintiffs in that case did not demonstrate by a preponderance of the evidence that the member needed 24-hour care. *Id.* at *23-24. In other words, RTC level of care requires a certain level of severity of symptoms and, like the plaintiffs in *Christina M.*, Plaintiffs mere recitation of symptoms, without evidence that the severity of those symptoms required 24-hour care, is not sufficient to show medical necessity here.

As discussed in BCBSIL's opening motion, there is no evidence that G.T. had severe

enough symptoms to render RTC medically necessary. BCBSIL's Motion at 5-9; *see also* PSAF ¶¶ 24-25 (G.T. was in a good mood and did not have thoughts of harming himself others); ¶¶ 26, 29 (G.T. complied with his medicine and was engaged in treatment); ¶¶ 30-31 (G.T. was able to go off-campus and on home visits). Similar to the member in *Christina M.*, even when G.T. displayed symptoms, he was still engaging in his treatment overall, and was noted to be positive and respectful. PSAF ¶ 29. In short, G.T. could have managed his symptoms at a lower level of care.

Plaintiffs point to G.T.'s purported "violence" at CALO, but their vague references fail to provide this Court with the context of these incidents. In fact, Plaintiffs' 119-paragraph statement of facts offers no evidence of "violence" at CALO and rather catalogue a handful of G.T.'s chronic, baseline behaviors across his 568-day stay at CALO. Plaintiffs' PFF ¶¶ 45(i), (n)-(p), (r), (ll), (oo), (qq)-(rr), (vv), (xx)-(yy), (aaa), (ddd), (eee), (ggg), (hhh), (jjj)-(lll). The majority of these incidents refer vaguely to things like the use of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Further, the record establishes that, at the time CALO discharged G.T. home in January 2022, he displayed the same behaviors and symptoms at the same frequency and level of severity as he had upon his admission in June 2020. *See* BCBSIL's Motion at 6. As in *L.C. v. Blue Cross & Blue Shield of Tex.*, for example, RTC is not medically necessary for a member experiencing aggression where these symptoms are a chronic behavior enduring throughout a member's stay and upon discharge. No. 2:21-cv-319, 2023 WL 1930227, at *4 (D. Utah Feb. 10, 2023) (RTC is not medically necessary for member with aggression and passive suicidal and homicidal ideation where member exhibited behavior throughout stay and otherwise had "positive behavior, mood and thoughts"). The same is true here: the majority of evidence indicates that, despite G.T.'s ▮▮▮▮▮▮▮ – which was far less severe than the member in *L.C.*—

10

this was his baseline, he was largely in a good mood, and his level of aggression did not undermine his ability to engage in treatment. PSAF ¶¶ 27, 29.

Plaintiffs also assert that G.T. was cruel to animals while at CALO, but the fact that CALO allowed G.T. to continue to care for his therapy dog indicates that the purported aggression was not taken seriously, nor was G.T. treated for any disorder related to cruelty to animals and thus, there is no evidence that G.T. required 24-hour RTC care. PFF ¶ 45(pp); PSAF ¶ 34. *See Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *21 (symptoms are not evidence of RTC where facility did not take special precautions or steps to address member's symptoms); *L.C.*, 2023 WL 1930277, at *16 ("The fact that CALO did not elevate these concerns to a medical diagnosis" supports finding that the member "could have been treated at a lower level of care."). Indeed, Plaintiffs themselves concede these references are overly vague. *See* PFF ¶ 45(h) n. 57 (noting that G.T. exhibited "something CALO staff characterized as hypervigilance" but "Plaintiffs could not find any notes in the record explaining what [hypervigilance] means or shedding more light on G.T.'s behavior"). As affirmed by the external review agency, these defiant behaviors are not evidence of G.T.'s need for RTC level of care. *See* PSAF ¶ 16.

In fact, courts have found that similar behaviors do not support the medical necessity of RTC level of care. *See, e.g., L.C.*, 2023 WL 1930227, at *16 (holding that "nothing about" a teenager refusing to listen or isolate is evidence RTC is medically necessary). Indeed, courts consistently find RTC is not medically necessary where a patient's symptoms were far more severe than those exhibited by G.T. where such behaviors are baseline. *L.D. v. UnitedHealthcare Ins.*, 684 F. Supp. 3d 1177, 1200-01 (D. Utah 2023) (member who smeared blood on walls did not need 24-hour care because she lacked self-harm for five months and participated in off-campus activities); *L.D. v. Indep. Blue Cross*, No. 23-cv-345, 2024 U.S. Dist. LEXIS 189627, at *13-14

(E.D. Pa. Oct. 18, 2024) (member who snuck drugs in to RTC did not require 24-hour care where overall mood had stabilized); *L.C.*, 2023 WL 1930227, at *15 (RTC not medically necessary despite member having passive homicidal ideation, property damage, and self-harm where such behaviors were baseline); *Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *21-22 (RTC was not medically necessary for member experiencing hallucinations and unable to walk). Therefore Plaintiffs' cherry-picked incidents of aggression are not severe enough to establish medical necessity of RTC.

G.T.'s purported outbursts were mostly in direct response to the extensive bullying by peers that was largely unchecked by the personnel at CALO. PSAF ¶¶ 27-28 (CALO allowed G.T.'s peers to bully him emotionally and physically by throwing rocks at him and intentionally triggering his trauma). Negative reactions within this context are not indicia that RTC was medically necessary. *L.C.*, 2023 WL 1930227, at *20-21 (homicidal ideation did not indicate RTC was medically necessary where the member reacted to RTC's actions); *Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *8, 23-24 (member's negative response to bullying did not render RTC medically necessary).

Plaintiffs focus heavily on G.T.'s history and condition years before his admission. *See* Plaintiffs' PFF ¶¶ 2-9, 11-20, 24-27.[5] But this historical information, while it can provide helpful background information, is not dispositive in and of itself that RTC level of care is medically necessary. *See Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *5, 22-23 (teen's past trauma and history of abuse is not evidence RTC was medically necessary where symptoms were stable and

---

[5] For example, the fact G.T. was hospitalized in January 2019 and discharged to his parents care is not evidence RTC was medically necessary in June 2020. PFF ¶¶ 21-23 (discussing inpatient hospitalization). *See Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *5, 22-24 (RTC not medically necessary where member attends 5 inpatient facilities in two-year period a year before RTC); *L.D. v. Indep. Blue Cross*, 2024 U.S. Dist. LEXIS 189627, at *1, 10 (RTC not medically necessary where member attends 5 inpatient facilities).

12

teen presented to RTC in a good mood); *L.D. v. Indep. Blue Cross*, 2024 U.S. Dist. LEXIS 189627, at *10-11 (history of "aggressive tendencies" and "erratic behavior" is not evidence RTC is medically necessary where member did not have symptoms of suicidal or homicidal ideations upon admission).

G.T. was not a risk to himself or others and was able to process his past traumas with no notable issues. PFF ¶ 45(k) (processed incident in foster care); ¶ 45(l) (processed anger with staff); ¶ 45(s) (processed anxiety around home visit and how to regulate); ¶ 45(w) (processed experience in foster care); ¶ 45(gg) (processed anger towards parents). Indeed, the fact G.T. was able to discuss mature topics and regulate his emotions supports that he could have received this treatment at a lower level of care. *See Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *5, 22-23 (RTC is not medically necessary where member is able to discuss trauma in therapy without "notable" negative reactions creating a risk to himself).

Plaintiffs' purported evidence also relies solely on G.T.'s condition before his 3 month stay at Trails, and is not evidence that he required RTC upon admission *to CALO. See L.D. v. Indep. Blue Cross*, 2024 U.S. Dist. LEXIS 189627, at *10-11 (history of "aggressive tendencies" and "erratic behavior" is not evidence RTC is medically necessary where member did not have symptoms of suicidal or homicidal ideations upon admission after 3 months of prior RTC); *Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *6, 22 (member who attended 90 days of treatment at one RTC did not require treatment at second RTC where symptoms had stabilized)

Like the member in *Christina M.*, "even on days where symptoms were recorded," G.T. was overall positive, and able to fully participate in treatment. *Id.* ¶¶ 26-29; *Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *23-24 (non-severe symptoms themselves are not evidence of RTC where member still is able to participate in treatment). CALO described G.T. as in a good mood,

calm, able to engage and participate in treatment, and go off-campus in the community. PSAF ¶¶ 22, 26-29; BCBSIL's Motion at 5-6; *see, e.g., Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *22; *J.M. v. United Healthcare Ins.*, No. 21-cv-6958, 2023 U.S. Dist. LEXIS 177247, at *20-24 (S.D.N.Y. Sept. 29, 2023). Despite some "setbacks," or as CALO reported, G.T.'s ▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (PSAF ¶ 26), G.T. had stabilized after 3 months of treatment at Trails, and presented to CALO in a good mood, with no suicidal or homicidal ideation, and no incidents of physical violence for three months. *L.D. v. Indep. Blue Cross*, 2024 U.S. Dist. LEXIS 189627, at *12-14 (RTC not medically necessary despite "setbacks" of sneaking in drugs).[6] As a result, "the preponderance of the record evidence suggests that at the time [the member] was discharged [from the first RTC] after covered inpatient treatment of about 3 ½ months, that [he] had made marked improvement and could have been safely treated in a partial hospitalization program." *Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *29. Therefore, RTC was not medically necessary.

The best evidence that G.T.'s stay at CALO was not medically necessary is the fact that the record establishes that CALO discharged G.T. in the same condition as his admission. PSAF ¶¶ 22-36 (noting that CALO saw an ▮▮▮▮▮▮ in G.T.'s anger less than two weeks before discharge), was overall respectful and in a good mood (*Id.* ¶¶ 25, 29), engaged and improved in treatment (*Id.* ¶ 29), and went off-campus and visited with family (*Id.* ¶¶ 30, 31). G.T.'s outbursts may be evidence he needed mental health treatment, but they are not evidence he had severe symptoms requiring 24-hour care at an RTC. *Christina M.*, 2024 U.S. Dist. LEXIS 191203, at

---

[6] The fact G.T.'s provider at Trails recommended RTC is similarly not sufficient evidence RTC was medically necessary. In *L.D. v. Independence Blue Cross*, the member attended treatment at Newport RTC for aggression and erratic behavior, and Newport recommended a second RTC. 2024 U.S. Dist. LEXIS 189627, at *8. But, at the second facility, the member was not in distress, had manageable anxiety, and denied suicidal or homicidal ideation. *Id.* As a result, the fact the member's provider recommended RTC did not "mandate a finding of medical necessity." *Id.* at *12. The same is true here.

14

*23-24 ("chronic" behavioral issues "supported continued mental health treatment, but do not demonstrate by a preponderance of the evidence that he needed 24-hour care."); *see also Mike G. v. Blue Cross Blue Shield of Tex.*, No. 2:17-cv-347, 2019 WL 2357380, at *14 (D. Utah June 4, 2019) (granting summary judgment to claims administrator where member's condition did not require 24-hour RTC care); *Christine S. v. Blue Cross Blue Shield of N.M.*, No. 2:18-cv-874, 2021 WL 4805136, at *5 (D. Utah Oct. 14, 2021) (same); *L.C.*, 2023 WL 1930227, at *15-16 (same); *J.M.*, 2023 U.S. LEXIS 177247, at *20-21 (same); *Christina M.*, 2024 U.S. Dist. LEXIS 191203, at *23-24 (same). Accordingly, Plaintiffs have failed to establish G.T. had severe symptoms requiring RTC care, and BCBSIL is entitled to judgment in its favor.

## IV. CONCLUSION.

For the foregoing reasons, the Court should deny Plaintiffs' Motion for Summary Judgment and grant BCBSIL's Rule 52 Motion for Judgment on the Administrative Record.

Dated: November 22, 2024

Respectfully submitted,

By: */s/ Rebecca R. Hanson*

Martin J. Bishop, No. 6269425
Rebecca R. Hanson, No. 6289672
Taylor Marcusson, No. 6342379
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Tel: 312.207.1000
Fax: 312.207.6400
Email: mbishop@reedsmith.com
Email: rhanson@reedsmith.com
Email: tmarcusson@reedsmith.com

*Counsel for Blue Cross and Blue Shield of Illinois*

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd day of November, 2024, a true and correct copy of the foregoing was served on Plaintiffs' counsel of record in accordance with the Federal Rules of Civil Procedure:

Brian S. King
BRIAN S. KING, P.C.
420 East South Temple, Suite 420
Salt Lake City, UT 84111
brian@briansking.com

*Attorney for Plaintiffs*

                                                */s/ Rebecca R. Hanson*
                                                Rebecca Hanson