IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| C.T. and G.T., Plaintiffs, | ) | |
| v. | ) | Case No. 1:23−cv−06112 |
| BLUECROSS BLUESHIELD of ILLINOIS, | ) | Honorable Jeremy C. Daniel |
| Defendant. | ) | REDACTED VERSION |

**BLUE CROSS AND BLUE SHIELD OF ILLINOIS'S LR 56.1 PROPOSED STATEMENTS OF ADDITIONAL FACT IN RESPONSE TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Martin J. Bishop, No. 6269425
Rebecca R. Hanson, No. 6289672
Taylor Marcusson, No. 6342379
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606
Tel: 312.207.1000
Fax: 312.207.6400
Email: mbishop@reedsmith.com
Email: rhanson@reedsmith.com
Email: tmarcusson@reedsmith.com

*Counsel for Blue Cross and Blue Shield of Illinois*

Pursuant to Local Rule 56.1, Defendant Blue Cross and Blue Shield of Illinois, a Division of Health Care Service Corporation, a Mutual Legal Reserve Company ("BCBSIL" or "Defendant") hereby respectfully submits the following Proposed Statements of Additional Fact in Response to Plaintiffs' Motion for Summary Judgment:

**Relevant Plan Terms**

1. The Plan provides coverage for a continuum of mental health and medical/surgical services that varies based on the level of intensity of services and the degree of restrictiveness of the setting in which care is provided. A.R. 1143, 1159, 1170, 1191.

2. At the highest level of intensity or restrictiveness is 24-hour care in a hospital. A.R. 1263. The next level of intensity below 24-hour hospital care is treatment in a Residential Treatment Center ("RTC"), which provides "medically monitored [care] with 24 hour medical availability and 24 hour onsite nursing service . . . ." A.R. 1170, 1271. For patients who do not require 24-hour monitoring, the Plan covers other services which provide a lower intensity of care. For example, the Plan covers care at an approved partial hospitalization program ("PHP") in which "patients spend days or nights[.]" A.R. 1268. Below PHP, the Plan also covers intensive outpatient programs ("IOP"), which provides services "for at least 3 hours per day, 2 or more days per week[.]" A.R. 1264. Finally, the Plan covers traditional outpatient services, the lowest intensity of treatment, which provide therapy in the office setting. A.R. 1268.

3. For each of these levels of care, the Plan requires both mental health and medical/surgical services to be "Medically Necessary[.]" (A.R. 1845, 1850, 1896), which means, in pertinent part, that they are "required, in the reasonable medical judgment" of BCBSIL for the treatment or management of a symptom or condition, and the service or care provided "is the most efficient and economical service which can be safely provided." A.R. 1265 (applicable exclusion

for services that are not medically necessary).

**Other Relevant Plan Provisions and Criteria**

4. To evaluate C.T.'s request for retroactive authorization for G.T.'s RTC services at CALO from June 25, 2020 through January 27, 2021, BCBSIL used the 23rd Edition of the MCG, which was in effect at the time of G.T.'s admission on June 25, 2020. A.R. 2297, 5197. With respect to C.T.'s request for preauthorization of C.T.'s services at CALO from January 27, 2021 going forward, BCBSIL used the 24th Edition of the MCG, which was in effect on the date of C.T.'s request on January 27, 2021. A.R. 6094, 1683.

5. Both the 23rd and 24th MCG criteria are identical and observe that [redacted]



[redacted]

6. The MCG criteria contain goals for [redacted]. A.R. 2297, 6094.

7. In addition, the MCG provide [redacted]

[redacted]



[redacted]

A.R. 2307, 6104.

**<u>BCBSIL Denied Plaintiffs' Preauthorization Request and Subsequent Appeal.</u>**

8. [redacted]

9. [redacted] treatment at RTC was not medically necessary because G.T. did not meet the 24th Edition of the MCG guidelines for RTC, and sent Plaintiffs a letter informing them that BCBSIL denied preauthorization for RTC for January 27, 2021 going forward. A.R. 6658 (noting that [redacted] BCBSIL explained that [redacted] *Id.* Further, G.T. was not suicidal, homicidal, nor self-injuring. *Id.* G.T. was taking his medications without issue. *Id.* G.T. attended and participated in groups. *Id.* G.T. was learning coping skills, had better insight, and [redacted] *Id.* BCBSIL also noted G.T. could complete his daily needs. *Id.* BCBSIL noted G.T. had supportive family involved in his care, and had access to a safe step-down. *Id.* [redacted] *Id.* G.T. could have been safely treated in a different setting, such as PHP. *Id.* Therefore, [redacted] On February 3, 2021, BCBSIL preauthorized the PHP level of care from February 3, 2021 to February 11, 2021. A.R. 6688, 6696.

10. On February 14, 2021, C.T. appealed BCBSIL's denial of preauthorization for

January 27, 2021 going forward. A.R. 1656. Plaintiffs' appeal consisted of a one-page letter from C.T., arguing that his treatment was medically necessary, and contained no further clinical information. A.R. 1656-57.

11. On March 1, 2021, BCBSIL denied Plaintiffs' appeal, and upheld its denial of preauthorization for January 27, 2021 going forward. A.R. 1860. BCBSIL reiterated G.T. was not a danger to himself or others. *Id.* G.T. was tolerating his medicines, and had supportive family. *Id.* BCBSIL noted that his mood and anxiety were better. *Id.* BCBSIL explained G.T. did not need 24-hour care. *Id.* As a result, BCBSIL stated G.T. did not meet the MCG guidelines for RTC, and could be safely treated at the outpatient level of care. *Id.*

**<u>BCBSIL Denies Plaintiff's Request for Retroactive Authorization and Plaintiffs' Subsequent Appeal.</u>**

12. On February 17, 2021, Plaintiffs sent in clinical information for C.T.'s treatment from June 25, 2020 through January 27, 2021. A.R. 5778, 5786, 6021. On March 16, 2021, BCBSIL determined RTC was not medically necessary for G.T. from June 25, 2020 through January 27, 2021, based on the 23rd Edition of the MCG in effect on June 25, 2020. A.R. 6628. BCBSIL stated that G.T. [REDACTED] *Id.* He also [REDACTED] *Id.* BCBSIL noted G.T. [REDACTED] *Id.* BCBSIL noted that G.T. [REDACTED] *Id.* G.T. was taking and tolerant of medications. *Id.* G.T. did not have medical issues needing 24-hour care. *Id.* G.T. was also able to complete his daily living needs. *Id.* BCBSIL further recognized that G.T. had supportive family involved in his care, and [REDACTED] *Id.* G.T. could have safely treated in a less intensive setting such as PHP. *Id.*

Therefore, BCBSIL did not authorize any medically necessary days. *Id.*

13. On June 29, 2021, C.T. submitted an external review request to the Department of Insurance for June 25, 2020 through January 27, 2021. A.R. 2279. On July 13, 2021, BCBSIL notified Plaintiffs their request was not yet eligible for external review because they had not yet exhausted their appeals for June 25, 2020 through January 27 2021. A.R. 5180. BCBSIL subsequently treated Plaintiffs' submission as an appeal for June 25, 2020 through January 27, 2021. *See* A.R. 5227.

14. On July 19, 2021, BCBSIL denied Plaintiffs' appeal for G.T.'s treatment June 25, 2020 through January 27, 2021. A.R. 5645. BCBSIL explained G.T. was not having thoughts to hurt himself or others. *Id.* G.T. was not hearing voices or seeing things. *Id.* G.T. was not a danger to himself nor others, nor was he aggressive or self-injuring. *Id.* G.T. was taking his medicine and joining in treatment. *Id.* G.T. was completing his activities of daily living. *Id.* G.T. had supportive family involved in his care, and safe access to treatment in a lower level of care. *Id.* G.T. could have been treated in PHP. *Id.*

**The Illinois Department of Insurance Upheld BCBSIL's Decision That G.T.'s Care Was Not Medically Necessary.**

15. On November 22, 2021, C.T. submitted a request for external review again to the Illinois Department of Insurance ("IDOI"). A.R. 691. BCBSIL notified Plaintiffs their claims were now eligible for external review thereafter. A.R. 6017.

16. On December 3, 2021, an anonymous reviewer with an MD in psychiatry, working for Advanced Medical Reviewers, an Independent Review Organization working for HCSC and the IDOI to review Plaintiffs' claim, upheld BCBSIL's denial of Plaintiffs' claims. A.R. 5772. The IDOI reviewer evaluated all of the documentation Plaintiffs provided. A.R. 5774. The reviewer noted that there were no acute psychiatric symptoms that would pose a serious risk in a lower level



of care, [redacted] A.R. 5774-75. The IDOI reviewer cited notes at Trails indicating G.T. had a [redacted] A.R. 5775. Further, while at Trails, G.T. punched a tree during his first week there, and had no other incidents, which the review noted indicated that [redacted] *Id.* The IDOI reviewer considered that G.T. had some instances of hitting, and oppositional behavior, but [redacted] *Id.*

17. The IDOI reviewer further noted the additional MCG criteria were not met. A.R. 5775. G.T. did not have serious comorbid medical disorders. *Id.* G.T. did not have failure of recent IOP or PHP, because nothing in the record indicated he ever attended IOP or PHP, and had successfully undergone prior treatment for 3 months while at Trails. *Id.* The IDOI reviewer also detailed that G.T. did not have impairment of his activities of daily living to the level requiring 24-hour care. *Id.* The reviewer further noted that [redacted] *Id.* The IDOI reviewer indicated her review relied on peer-reviewed medical literature. *Id.*

**<u>G.T.'s Condition at CALO Did Not Require RTC.</u>**

18. G.T. was hospitalized for 4 days in March 2020 for aggression towards his parents.

A.R. 5774. Thereafter, G.T. was discharged to RTC treatment at Trails of Carolina from March 26, 2020 to June 24, 2020. *Id.* He presented with aggression, property damage, defiance, lying, mood dysregulation, anger outbursts, and self-harm. *Id.*

19. While at Trails, G.T. underwent a psychiatric assessment with CALO. A.R. 2424. The assessment described his time at Trails, noting that he was quick to anger, but other than G.T. [redacted] A.R. 2427. The Report noted that prior to treatment, he was awkward with his peers, had tantrums, and aggression when he does not get his way. A.R. 2427. The Report described that G.T. has [redacted] A.R. 2425. The Report described that he [redacted] and struggles with relationships, in part by [redacted] *Id.* The Report also noted G.T. had no suicidal ideation or self-harm beyond an incident that took place when G.T. was 8 years old, 7-8 years prior to his treatment. A.R. 2425. The Report described G.T.'s parents as supportive of therapy. A.R. 2427. However, the Report noted [redacted] and could not give G.T. [redacted] A.R. 2427-28. The Report also stated [redacted] *Id.* [redacted] and [redacted]

20. The Report at Trails indicated G.T. had no incidents of animal cruelty. A.R. 2426.

21. G.T. was admitted to CALO on June 25, 2020. A.R. 4113. On G.T.'s initial Treatment Plan, CALO did not list a reason for admission, but the Treatment Plan stated that G.T. [redacted] A.R. 4108. CALO noted G.T.'s mood was [redacted] *Id.* He

had no thoughts of harming himself or others. *Id.*

22. On January 27, 2021, CALO recommended G.T. step down to PHP. A.R. 6794.

23. In February 2021 and March 2021, CALO reported G.T. had no symptoms demonstrating continued need for RTC. A.R. 2887, 2866, 2725.

24. G.T.'s psychiatrist reported that G.T. did not have thoughts of harming himself or others for the duration of his stay at CALO. A.R. 6902 (June 2020) 6898 (July 2020); 6891, 6889, 6884, 6881 (August 2020); 6877, 6873, 6869, 6865 (September 2020); 6861, 3511 (October 2020); 6846, 6842, 6838, 6834 (November 2020); 6828, 6826, 6822, 6814 (December 2020); 6810, 6805, 3057, 3031 (January 2021); 2966, 2914, 2883, 2872 (February 2021); 2837 (March 2021); 2641 (April 2021); 2472 (May 2021); 2391 (June 2021); A.R. 1071 (July 2021); 1013 (August 2021); 956 (September 2021); 6246 (November 2021); 807 (December 2021).

25. G.T.'s psychiatrist also always reported G.T.'s mood was either good or pretty good. A.R. 6903 (June 2020); 6898 (July 2020); 6891, 6889, 6884, 6881 (August 2020); 6877, 6875, 6873, 6869, 6865 (September 2020); 6861, 6859 (October 2020); 6846, 6842, 6838, 6834, 3351 (November 2020); 6828, 6830, 6826, 6822, 6814, 3294 (December 2020); 6810, 6805, 3057, 3031 (January 2021); 2966, 2914, 2883, 2872 (February 2021); 2837 (March 2021); 2641 (April 2021); 2472 (May 2021); 2389, 2391 (June 2021); A.R. 1071 (July 2021); 1013 (August 2021); 956 (September 2021); 6246 (November 2021); 807 (December 2021).[1]

26. G.T. was compliant with his medicine. A.R. 6903 (June 2020); 6898 (July 2020); 3755 (August 2020); 3536 (September 2020); 3422 (October 2020); 3286 (November 2020); 3121 (December 2020); 2973 (January 2021); 2842 (February 2021); 2715 (March 2021); 2639 (April

[1] G.T. did not see a psychiatrist for the entire month of October 2020, because CALO took him off campus biking. A.R. 896.

2021); 2471, 2389 (May 2021); A.R. 1100[2] (June 2021); 1038 (July 2021); 975 (August 2021); 913 (September 2021); 6261 (October 2021); 845 (November 2021); 828, 775 (December 2021).

27. However, within one week of his arrival, G.T. peers began to bully him significantly, which would continue throughout his stay. *See generally* A.R. 675 (noting incident where G.T. punched a bed after being teased G.T. had no thoughts of harming himself or others); 7037, 7038 (July 2020 describing that his peers ; 6879, 6887 (August 2020 where despite his frustrations of peers antagonizing him, G.T. had a good day); 6875 (other students threw rocks at G.T. in September 2020); 3476 (G.T. expressed he could not take any more of the bullying in October 2020); 3380 (November of 2020 note that G.T. struggles with getting bullied); 6925 (December 2020 CALO noted that while G.T. was "great," his teammates picked on him); 2835, 2845 (March 2021 CALO noted G.T. hit a peer after the peer bullied him); 2768 (March 2021 incident where peer instigated fight);. 2626, 2608, 2627 (April 2021 notes from CALO detailing G.T.'s peers and antagonized him); A.R. 2441, 2433 (May 2021 notes that G.T.'s peers continued to bully him).

28. G.T. experienced stress around the other children at CALO as a result of this unchecked bullying, and would sometimes retaliate. A.R. 3961, 3963; 3884 (noting his peers and "). Even so, CALO regularly noted that G.T. was receptive to coaching in these isolated incidents. A.R. 6867; 2771, 2752 (March 2021 receptive to coaching); 2639 (G.T. was receptive to coaching). In other words,

[2] While, on June 27, 2021, G.T. is noted as refusing all medications, no further context was noted, and conflicts with other evidence in the record. A.R. 1111.

[REDACTED] A.R. 1086, 1069 (July 2021 notes).

29. Importantly, these incidents did not undermine G.T.'s ability to participate in treatment as the record indicates that G.T. was mainly calm, respectful, participating in his treatment, and following all expectations without issues. *See, e.g.*, A.R. 3963, 3912 (July 2020); 6883; 6887 (August 2020); A.R. 3758, 3751, 3736, 3733, 3721, 3719, 3710, 3707, 3687, 3685, 3551, 3542, 3516, (September 2020); 3516, 3480, 3435-36, 3480 (October 2020); 3418, 3385, 3383, 3372, 3377, 3361, 3359, 3354, 3343, 3340, 3338, 3320, 3318, 3298 (November 2020); 3295, 3280, 3244, 3241, 3238, 3217, 3215, 3204, 3119 (December 2020); 3047, 3037, 3022, 2973 (January 2021 also noting that G.T. had positive boundaries with peers); 2980-79, 2964, 2933, 2923, 2907, 2902, 2893, 2877, 2867, 2861, 2859 (February 2021); 2833-34, 2822, 2756, 2724, 2833, 2831, 2828, 2782, 2779, 2765, 2762, 2760, 2756, 2750 (March 2021 also stating G.T. was engaged in treatment and "safe"); 2719-20, 2685-86, 2655, 2652, 2638, 2631, 2629, 2621, 2616 (April 2021); 2594, 2471-72, 2445, 2437 (May 2021 notes that G.T. was engaged, did not feed into negativity, and was appropriate in conversation); 2389 (June 2021 notes that G.T. was a "pleasant presence"); 1086, 1069 (July 2021 notes that G.T. [REDACTED]); 1011, 1006, 1001 (August 2021); 948, 946 (September 2021 notes that G.T. [REDACTED] 844-45 (November 2021 notes that G.T. participates well); 827-28 (December 2021).

30. G.T. also went on successful home visits. A.R. 3720 (September 2020 home visit where CALO described G.T. was able to regulate when frustrated); 7068 (December 2021 home visit went [REDACTED] 1052 (G.T. in a decent mood after a family visit in July 2021); 954 (September 2021 notes that noting G.T.'s family visit was good). He also had positive social calls

with his parents. A.R. 6831 (November 2020 positive social call); 3282 (December 2020 G.T. had positive social calls and was connecting with his family); 2384 (June 2021 where G.T. had friendly and [REDACTED] social calls); 1059, 1049 (July 2021 notes describing [REDACTED] social calls with parents); 1005, 984 (August 2021 notes that G.T. was [REDACTED] [REDACTED] on a pleasant call with his family); 939, 929 (September 2021 notes regarding social calls with family).

31. G.T. attended many excursions off-campus in the community. A.R. 3370 (describing November trip off campus); 3062 (describing January 2021 trip off-campus); 2835 (March 2021 trip off-campus); 2389 (G.T. went off-campus to a restaurant in June 2021); 1097 (G.T. had off-campus visit without issue in July 2021); 908 (G.T. went on off-campus visit in October 2021).

32. G.T. regularly had no relational issues. *See, e.g.*, 3748-49, 3740-41, 3738, 3732, 3725, 3724, 3706, 3558, 3301, 3304, 3310-11, 3313, 3316, 3336-37, 3353, 3356-58, 3380, 3232, 3229, 3220-22, 3208-09, 3205, 3198-99, 2653, 2626, 2622, 2614, 2612, 2605-06, 2599.

33. G.T.'s condition remained largely the same in November: G.T. was participating and engaged in his treatment, but continued to have outbursts, and would be written up for infractions such as profanity, teasing and mocking, intimidating others, horseplay, and refusing to listen or wake up. A.R. 852, 848 (detailing G.T.'s infractions), 844-45 (noting G.T. participates well in treatment). CALO took no particular actions to address these issues, indicating they assessed the incidents were minor. G.T. gave up on fostering a dog during November because he could not give her the care she needed, and had admitted to hitting the dog. A.R. 851.

34. By December 21, 2021, CALO decided to G.T. was ready for discharge from RTC level of care. A.R. 775. Even though CALO made the decision to discharge G.T. at this time, G.T.

was reported as seeing an "increase" in anger and his outbursts. *Id.*; 824, 838-40 (noting G.T. displayed profanity, did not want to wake up, isolated, refused to listen, and bullied mocked and insulted others), 841 (present and appropriate participation), 821 (G.T. threatened peers, destroyed property, screamed, and was hypervigilant, in addition to aforementioned behaviors), 832 (had good social call with family), 827-28 (G.T. participates in programming and school). On December 14, 2021, G.T. was removed from group after another peer screamed at him, the two "postur[ed]" at each other, the peer continued to be unruly and attack G.T., despite G.T. disengaging. A.R. 779.

35. Through his discharge from December 2021 to January 2022, G.T. continued to have the same outbursts and altercations with his peers that he had experienced throughout his stay at CALO. CALO continued to plan for G.T.'s discharge, nonetheless. A.R. 775 (reporting that G.T. was due to discharge from CALO despite seeing [REDACTED] [REDACTED]"). G.T. [REDACTED] from CALO only eleven days prior to his discharge, but CALO's plans to discharge him did not change. A.R. 757. Just eight days before CALO decided to discharge G.T., he broke a door out of anger. A.R. 748. Only two days before discharging G.T., CALO identified that G.T. still struggled with [REDACTED] [REDACTED] – the same issues G.T. experienced while admitted to and at CALO. A.R. 736.

36. CALO discharged G.T. to outpatient therapy on January 14, 2022. A.R. 731.

Dated: November 22, 2024

Respectfully submitted,

By: */s/ Rebecca R. Hanson*

Martin J. Bishop, No. 6269425
Rebecca R. Hanson, No. 6289672
Taylor Marcusson, No. 6342379
Reed Smith LLP
10 South Wacker Drive, 40th Floor
Chicago, Illinois 60606

Tel: 312.207.1000
Fax: 312.207.6400
Email: mbishop@reedsmith.com
Email: rhanson@reedsmith.com
Email: tmarcusson@reedsmith.com

*Counsel for Blue Cross and Blue Shield of Illinois*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 22nd day of November, 2024, a true and correct copy of the foregoing was served on Plaintiffs' counsel of record in accordance with the Federal Rules of Civil Procedure:

Brian S. King
BRIAN S. KING, P.C.
420 East South Temple, Suite 420
Salt Lake City, UT 84111
brian@briansking.com

*Attorney for Plaintiffs*

*/s/ Rebecca R. Hanson*
Rebecca Hanson